**AMERICAN LANDFILL, INC.,**
Plaintiff–Appellant,

v.

**STARK/TUSCARAWAS/WAYNE JOINT SOLID WASTE MANAGEMENT DISTRICT, Defendant–Appellee,**

**Betty D. Montgomery, Ohio Attorney General, Intervenor–Appellee.**

No. 97–4222.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 28, 1998.

Decided Jan. 28, 1999.

David C. Weiner (argued and briefed), Mark E. Staib (briefed), Erica L. Calderas (briefed), Hahn, Loeser & Parks, L.L.P., Cleveland, Ohio, for Plaintiff–Appellant.

Stephen M. O'Bryan (argued and briefed), Peter M. Poulos (briefed), Kelley, Mccann & Livingstone, L.L.P., Cleveland, Ohio, for Defendant–Appellee.

Bryan F. Zima (argued and briefed), Office of the Attorney General, Environmental Enforcement Section, Columbus, Ohio, for Intervenor–Appellee.

David E. Northrop, Nancy J. Miller, Samuels & Northrop Co., Columbus, Ohio, for amicus curiae.

Before: BOGGS, SUHRHEINRICH, and SILER, Circuit Judges.

## OPINION

SILER, Circuit Judge.

Plaintiff, American Landfill, Inc., challenges the constitutionality of certain assessments on solid waste disposal in Ohio. Defendant, Stark/Tuscarawas/Wayne Joint Solid Waste Management District, and Intervenor, the Attorney General of Ohio, moved to dismiss the action under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction based on the Tax Injunction Act, 28 U.S.C. § 1341, arguing that the fees were actually state taxes under federal law. The district court dismissed the action, finding the charges to be taxes. We affirm.

## I. BACKGROUND:

Under the Ohio Revised Code, the State of Ohio authorizes solid waste management districts to levy an assessment upon persons disposing of material at solid waste disposal facilities located within their district. *See* OHIO REV.CODE ANN. § 3734.57(B) (Banks–Baldwin 1998). The State requires each county to establish a solid waste management district or to participate in a joint solid waste management district with other counties. The district's purpose is to prepare, adopt, submit, and implement a solid waste management plan in compliance with the Revised Code. *See id.* § 3734.52(A). The solid waste management plan is to focus on the availability of and access to sufficient solid waste facility capacity to meet the district's solid waste needs. It does not regulate transporters or generators of solid waste. Solid waste facilities are not licensed by the districts and do not pay the assessment as a permit or license fee. The facilities pay a fee to the board of health for an operating license, *see id.* § 3734.06, and the solid waste facilities are regulated by the board, *see id.* § 3734.04.

The assessments collected by solid waste management districts are to be used for various purposes. Among them are:

— preparing and implementing the district's solid waste management plan;

— development and implementation of solid waste recycling or reduction programs;

— providing financial assistance to local boards of health for water analysis and other enforcement activities;

— providing financial assistance to counties for maintenance of roads, public facilities, and emergency services which result from the location of a solid waste facility in the counties; and

— assistance to local law enforcement and boards of health to enforce littering and open dumping laws.

The assessments are collected by the owner or operator of the solid waste disposal facility on the basis of tonnage or cubic yardage, forwarded to the board of county commissioners, board of directors of the solid waste district, or treasurer for the municipal corporation. *See id.* § 3734.57(E). Under the current Revised Code, the assessments for waste generated in-district and out-of-state are the same, while the assessments for waste generated in-state but out-of-district are twice the in-district rate. Under a repealed portion of the Revised Code, the assessments for in-district waste, in-state but out-of-district waste, and out-of-state waste were in a 1:2:3 ratio.

Stark, Tuscarawas, and Wayne Counties formed defendant joint solid waste district pursuant to the Revised Code, and collect

assessments from owners or operators of solid waste disposal facilities in accordance with the Code. American Landfill operates a solid waste disposal facility within Stark County.

American Landfill filed suit against the district for reimbursement of monies paid for the disposal of out-of-district wastes which were in excess of the in-district rate and for declaratory relief declaring the current differential between in-district assessments and in-state but out-of-district assessments to be unconstitutional. In its dismissal, the district court held that the Tax Injunction Act divested it of subject matter jurisdiction because the assessments in question were "taxes" and not "fees" under federal law. It relied solely on *Wright v. McClain*, 835 F.2d 143 (6th Cir.1987), in analyzing the issue.

## II. DISCUSSION:

■ The standard of review on the issue of subject matter jurisdiction is de novo. *See Greater Detroit Resource Recovery Auth. v. EPA*, 916 F.2d 317, 319 (6th Cir.1990).

■ The Tax Injunction Act ("the Act"), 28 U.S.C. § 1341, provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." In order to determine whether the Act divests a district court of jurisdiction over an action, that court must decide whether the assessment in question is a tax within the meaning of that term as used in the Act.[1] The definition of the term "tax" is a question of federal law. *See Wright v. McClain*, 835 F.2d 143, 144 (6th Cir.1987) (citing *Robinson Protective Alarm Co. v. City of Philadelphia*, 581 F.2d 371, 374 (3d Cir.1978)).

### A. Are the assessments for solid waste disposal under Ohio law, R.C. 3734.57(B), "taxes" or "fees" for purposes of the Tax Injunction Act?

■ *Wright v. McClain* emphasizes that a court must determine "whether the assess-

ment in question is for revenue raising purposes or merely a regulatory or punitive levy in the nature of a privilege fee," with "taxes" being assessed for revenue purposes and "fees" being assessed for regulatory or punitive purposes. *Wright*, 835 F.2d at 145. The challenged assessment in *Wright* was a Tennessee law providing that a gainfully employed parolee was required to contribute toward the cost of his supervision and rehabilitation as well as to a criminal injuries compensation fund. This court determined that the assessment was a "tax" for purposes of the Act, saying that:

> [a]lthough the levies imposed under the statute are earmarked for the Corrections Department budget and not the general fund, they are no less for revenue raising purposes as distinguished from license or privilege fees, or punitive assessments. The purposes of the charges are to defray the cost to the general public of [supervising offenders and compensating victims]. Those purposes relate directly to the general welfare of the citizens of Tennessee and the assessments to fund them are no less general revenue raising levies simply because they are dedicated to a particular aspect of the commonwealth.

*Id.*

Two other circuits addressing this question have used what may be seen as a three-factor test for determining whether an assessment is a "tax" under the Act. The factors originated in *San Juan Cellular Tel. Co. v. Public Serv. Comm'n*, 967 F.2d 683, 685 (1st Cir. 1992), after that court surveyed various cases defining "taxes," including *National Cable Television Ass'n v. United States*, 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974), and *Wright*. Those factors, as repeated in *Bidart Bros. v. California Apple Comm'n*, 73 F.3d 925, 931 (9th Cir.1996), are: "(1) the entity that imposes the assessment; (2) the parties upon whom the assessment is imposed; and (3) whether the assessment is expended for general public purposes, or used for the regulation or benefit of the parties upon whom the assessment is imposed." Both *San Juan*

---

1. Here, American Landfill does not argue that it cannot obtain a "plain, speedy and efficient rem-   edy" from the state.

and *Bidart* indicate that for cases where the assessment falls near the middle of the spectrum between a regulatory fee and a classic tax, the predominant factor is the revenue's ultimate use. *See San Juan*, 967 F.2d at 685; *Bidart*, 73 F.3d at 932. When the ultimate use is to provide a general public benefit, the assessment is likely a tax, while an assessment that provides a more narrow benefit to the regulated companies is likely a fee. *See id.*

In *San Juan*, a private cellular service firm was required to pay a periodic assessment of three percent of gross revenue in order to obtain authorization to begin service, and the money was placed in a special fund for defraying the expenses in operating the Public Service Commission, the entity granting the authorization. That assessment was determined to be a "fee." It was assessed by a regulatory agency, placed in a special fund, and dedicated to defraying regulatory expenses. *See San Juan*, 967 F.2d at 686. *Bidart* involved a challenge to the California Apple Commission's assessment (by the pound) on marketed apples where the assessments were used predominantly in promoting California apples. Because the assessment was not only made by an agency created by a vote of apple producers and terminable by a similar vote, but also placed in a special fund solely for use for Commission purposes, the assessment was found to be a "fee" rather than a "tax" for purposes of the Act.

The Supreme Court has not addressed the precise issue in dispute here, the means of defining a "tax" for purposes of the Tax Injunction Act. It has, however, differentiated between a "tax" and a "fee" in other situations, most notably during its analysis of FCC fees challenged as taxes in *National Cable Television Ass'n*, 415 U.S. at 336, 94 S.Ct. 1146. In that case, the Court stated that:

[t]axation is a legislative function ... [wherein the legislature may] disregard benefits bestowed by the Government on a taxpayer.... A fee, however, is incident to a voluntary act, e.g., a request that a public agency permit an applicant to practice law or medicine or construct a house or run a broadcast station. The public agency performing those services normally may exact a fee for a grant which, presumably, bestows a benefit on the applicant, not shared by other members of society.

*National Cable*, 415 U.S. at 340–41, 94 S.Ct. 1146.

In a context other than the Tax Injunction Act, this court in *United States v. River Coal Co.*, 748 F.2d 1103 (6th Cir.1984), found abandoned mine reclamation fees to be "taxes," rather than "fees," making them non-dischargeable in bankruptcy. The court used *National Cable* as guidance, and stated that "the chief distinction is that a tax is an exaction for public purposes while a fee relates to an individual privilege or benefit to the payer." *Id.* at 1106. In *River Coal*, the defendant attempted to liken the reclamation fees, paid on the basis of amount of coal mined and dedicated to reclamation of land damaged by coal mining, to permit fees which a coal operator must pay for the privilege of surface mining. *See id.* This court rejected that analysis, however, saying that:

[t]he permit fee is charged for the privilege of carrying on mining operations. The permit is issued at the request of an operator and bestows an individual benefit—the privilege of operating a surface mine—on the applicant. It is similar to a license to practice a profession or to conduct a broadcast station. The abandoned mine reclamation fee is quite different. It is imposed as an additional charge on operators who have already received permits. Unlike the permit fee, the reclamation fee does not confer a benefit on the operator different from that enjoyed by the general public when environmental conditions are improved. On the contrary, it is an involuntary exaction for a public purpose—to create a fund to be used for "reclamation and restoration of land and water resources adversely affected by past coal mining." (Citations omitted.)

*Id.*

American Landfill relies upon another Sixth Circuit bankruptcy case, *In re Jenny Lynn Mining Co.*, 780 F.2d 585 (6th Cir. 1986), arguing that it warns against focusing solely on who benefits from the charge.

While this is true, the language of that case indicates that it is not as strongly favorable to American Landfill as the company might wish.

One of the characteristics of a tax as opposed to a fee is that a tax is an exaction for public purposes rather than a voluntary payment for a private benefit. However, one purpose of most governmentally imposed fees is to support the agency that administers the program under which the fee is charged, presumably serving some public purpose. If this were the deciding factor, all such fees would be "taxes" for bankruptcy purposes. Where a governmental unit imposes a charge in return for bestowing an individual benefit on one who requests permission to engage in a regulated activity, the charge is a fee rather than a tax.

*Id.* at 589. However, when comparing the "reclamation fee" from the *River Coal* case to the deposit in question in *Jenny Lynn*, the court noted that:

The deposit was required because the operator had requested a permit, and the permit bestowed a discrete benefit on the applicant—the privilege of operating a surface mine. Without the deposit the reclamation division would not have issued a permit. This charge is unlike the "reclamation fee" considered in *River Coal.* Payment of that fee conferred no benefit on a mine operator. The *River Coal* operator had already paid the permit fee and received a permit and was then required to make an additional payment of 35 cents per ton of coal mined, for which no additional privilege or benefit was granted.

*Id.* at 588. This language demonstrates that this court is conceptually able to separate a required permit fee from other required fees which are matched to the amount of permitted activity and that this court is willing to define one as a "fee" and the others as "taxes."

American Landfill also discusses *Government Suppliers Consolidating Servs. v. Bayh*, 975 F.2d 1267 (7th Cir.1992), *cert. denied*, 506 U.S. 1053, 113 S.Ct. 977, 122 L.Ed.2d 131 (1993), and characterizes that case as "precisely on point." In truth, however, although that case ruled on the constitutionality of disposal fees similar to those in question here, it did not fully discuss the question of whether the disposal charges were in fact "fees" or "taxes." Two conclusory footnotes acknowledge the Tax Injunction Act and justify federal court jurisdiction by stating that the fees are used to defray regulatory costs, do not revert to the general fund, and are therefore "fees." *See Bayh*, 975 F.2d at 1271 nn. 2 & 3. The case is not persuasive, as no further detail or analysis is provided. American Landfill also notes that the Sixth Circuit has exercised jurisdiction over constitutional challenges to these fees and also similar Tennessee fees in *National Solid Wastes Mgmt. Ass'n v. Voinovich*, 959 F.2d 590 (6th Cir.1992), and *Waste Mgmt., Inc. of Tennessee v. Metropolitan Gov't of Nashville and Davidson County*, 130 F.3d 731 (6th Cir.1997). In both cases, however, the Tax Injunction Act was not raised by parties or by the court. This court's silence on the issue is also not persuasive.

Analyzing the assessments in question in this case under the case law above leads to the conclusion that the assessments are "taxes." Under *Wright v. McClain*, as in the decision by the district court, the assessments are placed in a fund that, while separate from the general fund, serves public purposes benefitting the entire community. Among those purposes specifically highlighted by the district court were the development of recycling programs, road and public facility maintenance, and emergency services. These purposes "relate directly to the general welfare of the citizens of [Ohio]," and dedication to a particular aspect of state welfare makes them "no less general revenue raising levies." *See Wright*, 835 F.2d at 145.

Using the approach of *San Juan* and *Bidart* leads to the same conclusion. While the first two factors, the entity imposing the assessment and the parties upon whom the assessment is imposed, weigh slightly in favor of American Landfill, the involvement of the legislature in authorizing the assessment keeps the case near the middle of the spectrum between a pure regulatory fee and a classic tax. The revenue's ultimate use as a

benefit shared by the public and not just the waste disposal facilities indicates that the assessment here is a tax.

*National Cable, River Coal,* and *Jenny Lynn* all also point to finding this assessment to be a tax. The permitting fee is separate from the waste disposal fees, and the waste district is not the permitting agency. The disposal fees are additional charges on previously-permitted facilities. The facility receives no benefit from the disposal fee different from that enjoyed by the general public in the district.

It is therefore clear that Counts II and III of the complaint are barred from consideration by the district court by the Tax Injunction Act because the assessments are indeed "taxes."

**B. Even if the assessments are "taxes," is Count I of the action, wherein American Landfill seeks reimbursement for those assessments paid under a prior, repealed version of the statute, also barred by the Tax Injunction Act?**

American Landfill gives little authority for its argument that a reimbursement suit for taxes paid under a repealed statute should be allowed to proceed in spite of the Tax Injunction Act. It cites a First Circuit case for the proposition that the Act does not apply to all state tax cases, and quotes a district court opinion from Michigan which states that refund actions are not barred by the Act but are instead subject to a court's discretion under doctrines of abstention. It is true that the Act is intended to protect principles of federalism and to acknowledge the states' need to administer their own fiscal affairs. *See In re Gillis,* 836 F.2d 1001 (6th Cir.1988). This goal of protecting the raising of revenue by states, however, does not aid American Landfill in distinguishing the reimbursement claim from its other claims. The idea that a federal court ordering reimbursement of revenue raised under a repealed statute is any less invasive of a state's fiscal affairs than an order of reimbursement of revenue under a current statute is illogical. In addition, American Landfill's argument that the revenues raised under the repealed disposal fees are not essential to the district's operation, and therefore do not fall under the principle behind the Act, also is illogical. The Act makes no exception for challenges to taxes which constitute a small portion of a state's revenue sources rather than a large portion. To allow American Landfill to proceed on Count I in this action would be to open the door to numerous actions seeking reimbursement for every marginally-challengeable repealed state tax that ever existed. Count I is also barred by this court's determination that the assessments are "taxes" rather than "fees" under the Tax Injunction Act.

AFFIRMED.