**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

VALERO TERRESTRIAL CORPORATION;
LACKAWANNA TRANSPORT COMPANY;
SOLID WASTE SERVICES, INCORPORATED,
d/b/a J. P. Mascaro & Sons,
Plaintiffs-Appellants,

v.

THE HONORABLE JOHN E. CAFFREY,
Director, Division of Environmental
Protection; RANDY HUFFMAN, Assistant
Chief, Office of Waste Management
of the Division of Environmental
Protection; DARRELL V. MCGRAW, JR.,
The Attorney General of the State of
West Virginia; RICHARD E. BOYLE,
Tax Commissioner,
Defendants-Appellees,

No. 99-1600

and

THE HONORABLE OTIS CASTO,
Commissioner, The Public Service
Commission of the State of West
Virginia; THE HONORABLE CHARLOTTE
LANE, Commissioner, The Public
Service Commission of the State of
West Virginia; THE HONORABLE
RICHARD FRUM, Commissioner, The
Public Service Commission of the
State of West Virginia; THE
HONORABLE ROBIN CAPEHART,
Secretary, Department of Tax and
Revenue of the State of West
Virginia,
Defendants.

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., Chief District Judge.
(CA-97-177-5-S)

Argued: December 2, 1999

Decided: March 2, 2000

Before MURNAGHAN and WILLIAMS, Circuit Judges,
and Cynthia H. HALL, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

_____

Affirmed by published opinion. Senior Judge Hall wrote the opinion,
in which Judge Murnaghan and Judge Williams joined.

_____

**COUNSEL**

**ARGUED:** William Francis Fox, Jr., Harleysville, Pennsylvania, for
Appellants. Silas Bent Taylor, Senior Deputy Attorney General,
Charleston, West Virginia, for Appellees. **ON BRIEF:** Logan Hassig,
SNYDER & HASSIG, New Martinsville, West Virginia, for Appel-
lants. Armando Benincasa, William E. Adams, Jr., Office of Legal
Services, WEST VIRGINIA DIVISION OF ENVIRONMENTAL
PROTECTION, Charleston, West Virginia, for Appellees Caffrey and
Huffman.

_____

**OPINION**

CYNTHIA HOLCOMB HALL, Senior Circuit Judge:

Valero Terrestrial Corp. ("Valero") appeals the district court's
granting of summary judgment in favor of John Caffrey ("Caffrey" or
"appellee") (sued in his official capacity as the Director of the Divi-

2

sion of Environmental Protection for the State of West Virginia along with other West Virginia state officials). Valero had sued Caffrey seeking declaratory and injunctive relief claiming that a charge imposed by West Virginia Code § 22-16-4(a) (the Solid Waste Assessment Fee), a section of West Virginia's Landfill Closure Act, is an unconstitutional violation of the commerce clause and Valero's substantive due process rights. Before the district court reached the substantive portion of Valero's claim, it deemed the charge imposed by § 22-16-4(a) a "tax" for purposes of the federal Tax Injunction Act[1] ("TIA") and consequently declared itself without jurisdiction to decide Valero's substantive claim. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

I.

Appellants (Valero, Lackawanna Transport Company, Solid Waste Services, Inc., and d/b/a J.P. Mascaro & Sons) own and operate two landfills and a solid waste transport company that uses landfills to dispose of customers' waste in West Virginia. Under West Virginia law, appellants are assessed various charges[2] that are imposed on parties that partake in the landfill industry.

One such charge is mandated by West Virginia Code § 22-16-4(a) which imposes "a solid waste assessment fee . . . upon the disposal of solid waste at any solid waste disposal facility[(landfill)] in this state in the amount of three dollars and fifty cents per ton . . . ." The charge is imposed upon "the person disposing of solid waste at [the landfills] . . . and the fee [is] collected by the operator of the [landfill] who . . . remit[s] it to the tax commissioner" on a monthly basis. See W. Va. Code § 22-16-4(b).

_____

[1] See 28 U.S.C. § 1341.

[2] Terminology in this case is rather confusing. The West Virginia statute at issue in this case refers to the assessments as "fees." However, because the issue in this case is to determine whether the assessments are "fees" or "taxes," to refer to this assessment as a "fee" a priori would complicate matters unnecessarily. Therefore we refer to the assessment as a "charge" throughout the analysis.

3

The revenue collected from the charge described above is deposited into the "Closure Cost Assistance Fund" which is dedicated to West Virginia's Landfill Closure Assistance Program. See W. Va. Code §§ 22-16-1 and 22-16-12. This Program provides funding for landfills that do not meet certain environmental criteria set out by the Environmental Protection Agency ("EPA"). The EPA, in promulgating its environmental criteria for the regulation of landfills, was concerned with remedying those instances where landfills would contribute to serious groundwater contamination.

The scheme enacted by West Virginia to combat contaminated landfills was constructed to address the problem concerning those landfill facilities whose owners were not able to pay the costs of upgrade or closure. Because of the combined necessities of complying with the EPA regulations and cleaning up contamination which created an enormous potential health hazard, the West Virginia legislature deemed that the charge at issue here would be funneled towards the landfill closure/upgrade costs for those facilities unable to afford such expenses. The West Virginia legislature stressed that this was necessary because a large percentage of citizens within the state rely on groundwater as their sole source of water.

Once the funds are collected, they are deposited under the rubric of the Landfill Closure Assistance Fund which is designated as a special revenue fund. Nevertheless, this fund is part of the general state fund within the state treasury and under the control of the State Treasurer. As such, any refund ordered by that account would come directly from the state treasury in accordance with state law which states that all money collected under the acts of the legislature becomes part of the state treasury. See W. Va. Code § 12-2-2.

Appellants challenged the constitutionality of the charge assessed under § 22-16-4(a). They claim that § 22-16-4(a) violates interstate commerce rights protected under the dormant Commerce Clause and also violates substantive due process rights. Appellees countered with the claim that the TIA divests the district court of jurisdiction on the basis that the charge imposed by § 22-16-4(a) is a "tax" and not a "fee." The district court agreed with appellees' argument and construing appellees' motion to dismiss for lack of subject matter jurisdiction as a motion for summary judgment, granted summary judgment for

4

appellees before reaching the merits of appellants' claim. Appellants appeal this ruling.

II.

We review de novo a grant of summary judgment. See Akers v. Caperton, 998 F.2d 220, 224 (4th Cir. 1993). Similarly, we review de novo a dismissal for lack of subject matter jurisdiction. See Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).

The TIA provides:

> The district court shall not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.[3]

28 U.S.C. § 1341. The TIA represents a recognition that states are best situated to administer their own fiscal operations. See Tully v. Griffin, Inc., 429 U.S. 68, 73 (1976). As such, the term "tax" is subject to a "broader" interpretation when reviewed under the aegis of the TIA. See Tramel v. Schrader, 505 F.2d 1310, 1315 (5th Cir. 1975).

The West Virginia charge at issue here is defined as a "fee" in the pertinent subsection of the statute. See W. Va. Code § 22-16-4(c). However, the nomenclature provided to the charge at issue is not material as the inquiry focuses on explicit factual circumstances that transcend the literal meaning of the terminology. See Folio v. City of Clarksburg, 134 F.3d 1211, 1216-17 (4th Cir. 1998).

To determine whether a particular charge is a "fee" or a "tax," the general inquiry is to assess whether the charge is for revenue raising purposes, making it a "tax," or for regulatory or punitive purposes, making it a "fee." See Collins Holding Corp. v. Jasper County, 123 F.3d 797, 800 (4th Cir. 1997). To aid this analysis, courts have developed a three-part test that looks to different factors: (1) what entity

_____

[3] There is no contention in this case that West Virginia state courts would not provide a "plain, speedy and efficient" remedy in similar circumstances.

5

imposes the charge; (2) what population is subject to the charge; and (3) what purposes are served by the use of the monies obtained by the charge. See San Juan Cellular Telephone Co. v. Public Service Comm'n, 967 F.2d 683, 685 (1st Cir. 1992); see also Bidart Bros. v. California Apple Comm'n, 73 F.3d 925, 931 (9th Cir. 1996).

In San Juan Cellular, the court set out the precise confines of a "classic tax" versus a "classic fee." The "classic tax" is imposed by the legislature upon a large segment of society, and is spent to benefit the community at large. See San Juan Cellular , 976 F.2d at 685. The "classic fee" is imposed by an administrative agency upon only those persons, or entities, subject to its regulation for regulatory purposes, or to raise "money placed in a special fund to defray the agency's regulation-related expenses." Id. The San Juan Cellular court noted that most charges will not fall neatly into either extremity and the characteristics of the charge will tend to place it somewhere in the middle. See id.

When the three-part inquiry yields a result that places the charge somewhere in the middle of the San Juan Cellular  descriptions, the most important factor becomes the purpose behind the statute, or regulation, which imposes the charge. See South Carolina v. Block, 717 F.2d 874, 887 (4th Cir. 1983). In those circumstances if the ultimate use of the revenue benefits the general public then the charge will qualify as a "tax," while if the benefits are more narrowly circumscribed then the charge will more likely qualify as a "fee." See San Juan Cellular, 967 F.2d at 685.

The first two steps of the inquiry indicate that the charge imposed by W. Va. Code § 22-16-4(a) is a "tax." First, the charge was imposed by the West Virginia legislature and not any administrative agency. Second, the charge is imposed on the persons disposing of the waste into the landfill and thus is paid by those citizens and businesses who pay a collection service fee to have their waste picked up. See W. Va. Code § 22-16-4(c). This subsection ensures that the cost of the charge is passed from the transporter of the waste to the generators of the waste, so to spread the cost to a significantly wider proportion of the population.

The last part of the test also yields to the conclusion that the charge is a "tax" because the benefits of the charge touch a large segment of

6

the West Virginia population. The statute was passed pursuant to an EPA regulation that sought to reduce the hazard of contaminated landfills. The aim of the West Virginia statute is to enable those landfill owners, who cannot for financial reasons comply with EPA regulations, close or upgrade said landfills to non-hazardous levels. Thus, it is the environmental safety of West Virginia's groundwater that is the paramount purpose of the § 22-16-4(a) charge and it cannot be said that such purpose serves a small section of society.

Appellants, in applying the San Juan Cellular test, cite five reasons why the charge at issue should be declared a "fee" and not a "tax." Upon close examination of the five reasons argued by appellants, it emerges that in fact these five reasons boil down to one. That reason being that the revenue raised by § 22-16-4(a) is deposited into a special fund and used for a specific purpose.**4** By such reasoning, appellants are elevating form over substance in denigration of the central holding of San Juan Cellular that mandates an examination of the use and purpose of the charge rather then a cursory review of where the revenue is placed or how the charge is referred to in the promulgating document. See San Juan Cellular, 967 F.2d at 685. Moreover, the fact that revenue is placed in a special fund is not enough reason on its own to warrant characterizing a charge as a "fee." See Collins, 134 F.3d at 1217. If the revenue of the special fund is used to benefit the population at large then the segregation of the revenue to a special fund is immaterial. See Bidart, 73 F.3d at 932. Thus, when revenue is placed in a special fund the further inquiry must be whether the money is used "to benefit regulated entities, . .. to defray the cost of regulation" (making it resemble a "fee") or else to benefit the general public. See Collins, 134 F.3d at 1217. As discussed above, the purpose of the special fund serves neither purpose that would render it a "fee" but falls squarely within the characterization of a "tax." Lastly, even though the revenue is placed in a special fund, it is nonetheless

_____

**4** Appellees correctly note that one of the "five" reasons alluded to by appellants is that part of the proceeds of the charge are dedicated to the Solid Waste Enforcement Fund for administration purposes pursuant to W. Va. Code § 22-16-4(h). This subsection of the Code was passed in March 1998, and was not presented for review to the district court below. Therefore, this subsection is not properly before this Court for review and cannot form a basis for appellants' argument.

deposited into the State Treasury pursuant to West Virginia law, which further militates towards the widespread benefit of the charge.

Appellants also try to analogize the facts of this case to three cases where the courts deemed a state charge a "fee" and thus not subject to the TIA. See Trailer Marine Transport Co. v. Rivera Vazquez, 977 F.2d 1 (1st Cir. 1992); Bidart, 73 F.3d 925 (9th Cir. 1996); and Government Suppliers Consolidating Servs., Inc. v. Bayh, 975 F.2d 1267 (7th Cir. 1992).[5] Each of these cases has factual differences that distinguish them from the facts present here. Trailer Marine involved a Puerto Rico compulsory, no-fault compensation plan to protect victims of motor vehicle accidents, funded by a $35.00 vehicle user fee. See Trailer Marine, 977 F.2d at 3. In ruling that the $35.00 assessment was a fee, the First Circuit focused on the fact that beneficiaries were a specific, limited segment of society (car accident victims). See id. at 6. This factually distinguishes Trailer Marine from this case in that, as discussed above, the beneficiaries of the charge are spread widely amongst the West Virginia population. In Bidart, which concerned a charge assessed by the California Apple Commission, the Ninth Circuit relied on the fact that the charge was not assessed by the legislature, was intended to promote apple-growing in the state, and the revenue was spent for the promotion of California apples which only provided an incidental benefit to the general public. See Bidart, 73 F.2d at 932-33. In this case it is the West Virginia legislature that promulgated § 22-16-4(a) for the benefit of all those citizens and businesses whose source of water is groundwater. Government Suppliers is inapposite because the court in that case never adequately addressed whether the charges were "taxes" or "fees" under the TIA and merely acknowledged the TIA in cursory footnotes. See Government Suppliers, 975 F.2d at 1271 nn. 2 & 3.

More instructive to the analysis of § 22-16-4(a) is American Land-

_____

5 Appellants also cite to a West Virginia state court case. See Wetzel County Solid Waste Authority v. West Virginia Division of Natural Resources, 195 W. Va. 1 (1995). Under federal law, it is federal courts, and not state courts, that determine whether a charge is "tax" or a "fee" under the TIA. See Wright v. McClain, 835 F.2d 143, 144 (6th Cir. 1987). Consequently, Wetzel (which was not interpreting § 22-16-4(a)) is not relevant to this case.

8

fill, Inc. v. Stark/Tuscarawas/Wayne Joint Solid Waste Management District, 166 F.3d 835 (6th Cir. 1999). In American Landfill, like here, the plaintiff challenged the constitutionality of a solid waste disposal charge that was levied against persons who disposed of waste at landfills and whose revenue was placed in a special fund. See id. at 836. The articulated purposes behind the charge included enforcement of landfill laws and regulations, water testing and defraying of administrative costs. See id. Unlike here, the charge was to be levied by the administrative agency with authority granted to it by the Ohio legislature. See id.

In ruling the charge a "tax" under the TIA, the Sixth Circuit reasoned that of supreme relevance was the fact that the fund "while separate from the general revenue, serves public purposes benefitting the entire community" and related directly to the citizens of Ohio. See id. at 839-40. This holding is particularly instructive in this case because the American Landfill court had more factors that pointed towards the direction of "fee" characteristics under San Juan Cellular and nevertheless ruled the charge a "tax." In American Landfill the levying authority was the administrative agency and one of the enumerated purposes of the charge was to defray administrative costs while here such facts are not present. Therefore, the remaining overarching similarities between American Landfill and § 22-16-4(a), being the general benefit of the charge to the community, argue in favor of declaring § 22-16-4(a) a "tax."

Appellants final argument is that the district court judge in this case, Judge Stamp, has already ruled that § 22-16-4(a) is a "fee" rather than a "tax" in a previously related case. See Valero Terrestrial Corp. v. McCoy, 36 F. Supp. 2d 724 (N.D.W.Va. 1997). Reliance on this opinion is misplaced. First, in a subsequent order, Judge Stamp vacated that opinion and dismissed the underlying lawsuit. See Valero Terrestrial Corp. v. McCoy, 50 F. Supp. 2d 564 (N.D.W.Va. 1999). Second, the specific charge at issue here was never addressed in either opinion and Judge Stamp explicitly remarked that because the constitutionality of § 22-16-4(a) was being litigated in this case, there was no reason to duplicate the effort in the prior case. See Valero, 50 F. Supp. 2d at 567-68. Third, the charge ruled a "fee" under the TIA in the prior case has since been repealed by the West Virginia legislature. See id. at 569. Fourth, the charge challenged in the prior lawsuit

9

was substantially different than the one at issue here in that it applied only to out-of-state waste deposited in West Virginia landfills with the stated purpose of discouraging such conduct. This rationale is not applicable to § 22-16-4(a). Therefore, appellants' attempts to create a link to these prior cases are unavailing.

CONCLUSION

For the foregoing reasons, we affirm the district court's opinion declaring W. Va. Code § 22-16-4(a) to be a "tax." The district court was correct to declare itself without jurisdiction to entertain Valero's claim pursuant to the TIA.

AFFIRMED

10