PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CLUB ASSOCIATION OF WEST VIRGINIA,
INCORPORATED; CHRIS WAKIM;
FOUNDATION CORPORATION; BRADLEY
YEATER; TRUCKSTOP GAMES OF WV,
LLC; VIKING VENDING SERVICES,
LLC,

          *Plaintiffs-Appellants,*

      v.

ROBERT E. WISE, JR., in his official
capacity as Governor of the State of
West Virginia; JOHN C. MUSGRAVE,
in his official capacity as the
Director of the West Virginia
Lottery Commission; WEST VIRGINIA
LOTTERY COMMISSION; HOWARD E.
HILL, JR., Colonel, in his official
capacity of the West Virginia State
Police,

          *Defendants-Appellees.*

No. 01-2154

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Charles H. Haden II, Chief District Judge.
(CA-01-634-2)

Argued: February 25, 2002

Decided: June 17, 2002

Before WIDENER, WILLIAMS, and MOTZ, Circuit Judges.

Affirmed by published per curiam opinion.

---

## COUNSEL

**ARGUED:** Richard B. Sandow, JONES, GREGG, CREEHAN & GERACE, L.L.P., Pittsburgh, Pennsylvania, for Appellants. Thomas Ryan Goodwin, Special Assistant Attorney General, GOODWIN & GOODWIN, L.L.P., Charleston, West Virginia, for Appellees. **ON BRIEF:** John P. Davis, III, JONES, GREGG, CREEHAN & GERACE, L.L.P., Pittsburgh, Pennsylvania, for Appellants. Johnny M. Knisely, II, Carrie Goodwin Fenwick, GOODWIN & GOODWIN, L.L.P., Charleston, West Virginia, for Appellees.

---

## OPINION

PER CURIAM:

Club Association of West Virginia and other plaintiffs appeal the District Court's decision to dismiss the case pursuant to the Tax Injunction Act, and, in the alternative, abstain pursuant to *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941). They seek an adjudication of the merits of their claims that, *inter alia*, the West Virginia Limited Video Lottery Act unconstitutionally infringes their rights of free association, unbridled interstate travel, equal protection, and due process. We affirm dismissal under the Tax Injunction Act, 28 U.S.C. § 1341.

I.

During a Special Session, the West Virginia legislature enacted, and Governor Wise, the defendant below, signed, the West Virginia Limited Video Lottery Act, W.Va. Code §§ 29-22B-101 *et seq*. The avowed purpose of this law was to establish a single state owned and regulated video lottery thus allowing the State to collect revenue therefrom, control the operators of the machines, and stem the proliferation of gambling in the State.[1] Prior to this Act, notwithstanding

---

[1]Section 29-22B-202 provides in part that the State can "control, own and operate a video lottery by possessing a proprietary interest in the

the repeated attempts of the legislature to ban this type of gambling, gambling machines were only *prima facie* illegal; evidence of their use in illegal gambling had to be shown before they could be seized and destroyed making enforcement difficult. As a result, the machines proliferated in West Virginia clubs, taverns, and the like. The State estimates that more than 13,000 of these machines were in West Virginia at the time of enactment.

The Act features a licensing scheme having the following elements: 1) the act establishes four types of licenses, manufacturer's, operator's, retailer's, and service technician's, each having its own fee structure ranging from $100 for a service technician's to $10,000 for an operator's license; 2) the licenses are awarded for renewable 10 year periods; 3) potential license holders are required to be West Virginia residents for a period of four years prior to application and during the duration of the license; 4) 30 to 50% of the gross profits from the operation of the machines are due to the State. W.Va. Code §§ 29-22B-1102, 1103, 1401-8. Authority to carry out the licensing scheme is given to the Lottery Commission. The Commission is allowed to inspect all premises where video lottery machines are located, seize illegal machines, books and records, and other papers. W.Va. Code §§ 29-22B-402. The Lottery Commission must determine that potential licensees are of good character, honesty, and integrity before they are licensed. The State Police are delegated the responsibility for investigating these traits. W.Va. Code §§ 29-22B-502, 602.

The statute also provides for criminal penalties. As of January 1, 2002, unlicenced video lottery machines are *per se* illegal and may be seized at any time. W.Va. Code § 1801. Those who possess (actual or constructive) unauthorized machines are subject to a mandatory minimum of 1 year in jail and not less than $50,000 in fines. W.Va. Code §§ 29-22B-1705.

The State claims that this statutory scheme will result in $81 million in increased revenue. When the statute is fully implemented with

---

main logic boards" and certain "memory chips" and "software" and "related materials."

the authorized 9,000 machines, the State would collect monies in excess of $250,000 per day.

Appellants are various individuals and organizations who fall into 4 classes: 1) those who are eligible to apply for a license; 2) those who are currently ineligible because they are non-residents (whether or not they intend to become so); 3) those who are eligible but will soon lose eligibility because of an impending move out of West Virginia; and 4) current owners of video gambling machines located in West Virginia. They seek declaratory and injunctive relief on the grounds that the statute violates their rights under the First and Fourteenth Amendments, the right of free travel, due process, and equal protection under the Privileges and Immunities, Due Process, and Equal Protection clauses, and the right to free interstate commerce. With respect to the first claim, the Appellants allege that the vague standards and delegation to the State Police to determine "good character" for potential licensees violates their right of freedom of association.

## II.

In an exhaustive opinion detailing the extensive history of illegal gambling machines in West Virginia and the State's repeated efforts to curtail their use, the district court found that the West Virginia Limited Video Lottery Act constituted a tax. See *Club Ass'n. v. Robert Wise*, 156 F. Supp. 2d 599, 613 (S.D.W. Va. 2001). As such, it held that the Tax Injunction Act, 28 U.S.C. § 1341, barred the court's jurisdiction.[2] In coming to its decision, the court reasoned that the charges associated with licensure under the act "appear[ ] to be imposed primarily for revenue generation purposes," and that the proceeds collected under the act "are placed into [a fund], which is earmarked for many causes beneficial to all West Virginians either directly or indirectly," thus making the scheme "closely resemble[ ] a classic tax." 156 F. Supp. 2d 613-4.

---

[2]28 U.S.C. § 1341 provides:

The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

The court went on to detail other features of the statute that looked like a "classic fee," and thus not subject to the Tax Injunction Act. These countervailing features, such as the size of the population subject to the charges and the identity of the collector of the monies, were relatively minor, but the court concluded that "the charge may fall somewhere between the two extremes of a classic tax and classic fee." 156 F. Supp. 2d at 614. In reliance on our decision in *Valero Terrestrial Corp. v. Caffrey*, 205 F.3d 130 (4th Cir. 2000), the court stated that because the statute had features of both a tax and a fee "the most important factor becomes the purpose behind the statute imposing the charge." The court found that the statute's purpose was to control a segment of gambling the State had struggled with for years. The enhanced control thus provided benefitted those people of West Virginia, presumably a large number, who view illegal gambling as a problem worthy of legislative attention. Additionally, the court noted again that the revenue derived from the statute was earmarked for programs that would benefit the State's populace as a whole. 156 F. Supp. 2d 614. Accordingly, finding the state court's doors open to challenge the tax, the district court granted the defendant's motion to dismiss. 156 F. Supp. 2d 614-16.

Having had the benefit of full briefing and oral argument, we are of opinion, and decide, that the West Virginia Limited Video Lottery Act is a tax for the reasons stated in the opinion of the district court. Accordingly, the district court's jurisdiction was barred by the Tax Injunction Act, 28 U.S.C. § 1341.[3]

The judgment appealed from is accordingly affirmed on the opinion of the district court, *Club Ass'n of West Virginia, Inc. v. Wise*, 156 F. Supp. 2d 599 (S.D.W. Va. 2001), which we adopt as our own.

*AFFIRMED*

---

[3]Because of our disposition, we do not consider the district court's alternative ruling regarding *Pullman* abstention.