PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

GENON MID-ATLANTIC, LLC,

        *Plaintiff-Appellant,*

v.

MONTGOMERY COUNTY, MARYLAND,

        *Defendant-Appellee.*

No. 10-1882

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, Senior District Judge.
(8:10-cv-01381-PJM)

Argued: May 12, 2011

Decided: June 20, 2011

Before WILKINSON, NIEMEYER, and KEENAN,
Circuit Judges.

Reversed and remanded by published opinion. Judge Wilkinson wrote the opinion, in which Judge Niemeyer and Judge Keenan joined.

**COUNSEL**

**ARGUED:** Lewis Steven Wiener, SUTHERLAND ASBILL & BRENNAN, LLP, Washington, D.C., for Appellant. Karen Louise Federman Henry, COUNTY ATTORNEY'S OFFICE, Rockville, Maryland, for Appellee. **ON BRIEF:** Jeffrey A. Friedman, A. Pilar Mata, G. Brendan Ballard, SUTHER- LAND ASBILL & BRENNAN, LLP, Washington, D.C., for Appellant. Marc P. Hansen, Acting County Attorney, Patricia P. Via, Chief, Division of Litigation, Scott R. Foncannon, Associate County Attorney, COUNTY ATTORNEY'S OFFICE, Rockville, Maryland, for Appellee.

---

**OPINION**

WILKINSON, Circuit Judge:

The question in this case is whether a Montgomery County, Maryland exaction on carbon dioxide emissions, levied only upon GenOn Mid-Atlantic's electricity-generating facility, is a tax or a fee. After holding that the carbon charge was a tax, the district court determined that the Tax Injunction Act deprived it of jurisdiction to hear GenOn's challenge. We think, however, that because the charge was levied upon a single "taxpayer" and formed part of a wide-ranging regulatory program, the district court had jurisdiction over GenOn's claims. We accordingly reverse and remand for further proceedings.

I.

The Montgomery County Council enacted Expedited Bill 29-10 on May 19, 2010 to impose a levy on large stationary emitters of carbon dioxide within the county. The County Executive signed the bill on May 28. Bill 29-10 imposes what it terms an "excise tax" of $5 per ton of carbon dioxide emit-

ted, but only on emitters that end up exceeding 1 million tons of carbon dioxide in a year. For those large emitters, the $5 per ton charge applies to every ton emitted. The revenue generated by the levy is to be deposited in the Montgomery County general fund, with 50% earmarked for funding greenhouse gas reduction programs such as mass transit and 50% available for the County's general use. The County projects that the levy will raise annual revenue between $11.7 and $17.6 million.

GenOn operates an electricity plant in Montgomery County that emits carbon dioxide. As the only entity in Montgomery County expected to exceed 1 million tons of carbon dioxide emissions annually, GenOn is the only entity likely to be subject to the $5/ton levy on its entire volume of emissions. After consulting with the County's electricity service provider, the Council determined that GenOn would not be able to pass the cost of the carbon charge on to its Montgomery County customers because its power is sold via competitive auction.

Four days after Bill 29-10 was signed into law, GenOn sought to enjoin enforcement on the ground that it violates the United States and Maryland Constitutions. The district court noted that the charge had some indicia of a regulatory fee, but ultimately concluded that it was more like a tax for purposes of the Tax Injunction Act. The court then dismissed GenOn's suit without prejudice. GenOn now appeals.

## II.

The Tax Injunction Act "is meant to prevent taxpayers from 'disrupting state government finances'" with excessive litigation in federal court. *Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 189 (4th Cir. 2007) (quoting *Hibbs v. Winn*, 542 U.S. 88, 104 (2004)). The Act provides that the "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any *tax* under State law where a plain, speedy and efficient remedy may be had in the courts of such

State," 28 U.S.C. § 1341 (emphasis added). The only issue in this case is whether Bill 29-10 imposes a tax that lies outside our jurisdiction or whether it imposes a fee that lies within it.

When determining "whether a particular charge is a 'fee' or a 'tax'" for purposes of the Tax Injunction Act, we do not focus on the superficial "nomenclature provided to the charge at issue." *Valero Terrestrial Corp. v. Caffrey*, 205 F.3d 130, 134 (4th Cir. 2000). Instead, we must examine the "explicit factual circumstances that transcend the literal meaning of the terminology" and ask whether the charge is levied primarily "for revenue raising purposes, making it a 'tax,'" or whether it is assessed primarily "for regulatory or punitive purposes, making it a 'fee.'" *Id.* To aid in this determination, this court has looked to three factors for guidance: "(1) what entity imposes the charge; (2) what population is subject to the charge; and (3) what purposes are served by the use of the monies obtained by the charge." *Id.* We review de novo the district court's decision to dismiss for lack of subject matter jurisdiction. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

### III.

Montgomery County claims that the carbon charge is a tax under this three-part inquiry for two primary reasons. Its initial argument is that the process by which Bill 29-10 was enacted was the process by which taxes are typically enacted. *See Collins Holding Corp. v. Jasper County*, 123 F.3d 797, 800 (4th Cir. 1997). On this view, Bill 29-10 levies a tax because the "entity [that] imposes the charge" is the Montgomery County Council—the county's general legislative organ—rather than an administrative agency. *Valero*, 205 F.3d at 134. The County Council enacted Bill 29-10 pursuant to the taxing authority granted to the Council by Maryland's General Assembly, *see* 1963 Md. Laws ch. 808 (codified at Montgomery County Code, § 52-17), and called the charge an excise tax while codifying it in the chapter of the County

Code dedicated to taxation. *See* Montgomery County Code, § 52-96(a). The revenue created by the carbon charge is to be collected by the Director of the Department of Finance, the County's tax collector. *Id.* § 52-96(e)(2).

The county also argues that the levy is a tax because it is expected, at this point, to raise significant revenue. The fiscal impact statement prepared by the County's Office of Management and Budget estimated that the charge would collect annual revenue between $11.7 and $17.6 million from GenOn. In addition, 50% "of the monies obtained by the charge" are dedicated to the county's general fund, *see Valero*, 205 F.3d at 134, though the remainder is earmarked for the County's greenhouse gas reduction programs, Montgomery County Code, § 52-100.

## IV.

While Bill 29-10 does bear some of the indicia of a tax, "we can readily conclude, without a seriatim analysis, that [it] is not a tax provision." *Retail Indus. Leaders Ass'n*, 475 F.3d at 189. The process of the bill's enactment, as well as its potential revenue-generating character, are of course relevant factors in this inquiry. However, those features are, in this case, mere masks that cannot be used to disguise what is in substance a punitive and regulatory matter.

## A.

The chief problem with Montgomery County's carbon charge is that the burden falls on GenOn alone. But the whole idea of a tax is that it is, to some extent, a burden generally borne. Thus, an "assessment imposed upon a narrow class" is less likely to be a tax than an "assessment imposed upon a broad class of parties." *Bidart Bros. v. Cal. Apple Comm'n*, 73 F.3d 925, 931 (9th Cir. 1996). The fact that this charge affects the narrowest possible class is compelling evidence that it is a punitive fee rather than a tax. The County acknowl-

edges—as it must—that the "the universe of taxpayers under Bill 29-10 does not represent a major segment of society." *Brief of Appellee* at 7. But to speak of a "universe" of anything with only one inhabitant rings odd upon the ear.

Montgomery County nevertheless contends that the bill's process of enactment and revenue-raising potential render it a tax despite this singular focus on GenOn. We find this contention unpersuasive. It would be an extraordinary tax that applied only to one taxpayer—so extraordinary, in fact, that Montgomery County has been unable to identify even one exaction that applies only to a single entity that has been held a tax for purposes of the Tax Injunction Act. For even when the tax base encompasses less than a society in its entirety, taxes generally apply to at least more than one entity. *See, e.g.*, *Valero*, 205 F.3d at 134 ("The 'classic tax' is imposed by the legislature upon a large segment of society . . . .") (quoting *San Juan Cellular Tel. Co. v. Pub. Serv. Comm'n of Puerto Rico*, 967 F.2d 683, 685 (1st Cir. 1992)). Here, however, of all the carbon dioxide emitters in Montgomery County, only GenOn is expected to be subject to the levy.

Our conclusion that Bill 29-10 imposes a punitive fee is strengthened by the fact that GenOn will likely be unable to pass the cost of the charge on to its customers. As we recognized in *Valero*, a charge is less likely to be a fee when the payer can "spread the cost to a significantly wider proportion of the population." 205 F.3d at 134. However, according to a statement by Bill 29-10 sponsor Councilmember Roger Berliner, GenOn sells the electricity it produces at auction and lacks the market power to pass the $5-per-ton fee on to energy consumers while remaining competitive. *See* Press Release, Montgomery County Council, Councilmember Roger Berliner to Introduce Tax on Major Carbon Dioxide Emitters (Apr. 22, 2010). The County Council was thus well aware that the incidence of this charge would fall entirely on GenOn. Indeed, Councilmember Berliner hailed this as a selling point. In sum,

we have no difficulty concluding that such an exaction is a fee that targets GenOn in punitive fashion.

B.

In addition to its punitive scope, Montgomery County's carbon charge falls outside the ambit of the Tax Injunction Act because of its plainly regulatory purpose. We have noted that the Tax Injunction Act turns on the difference "between broader-based taxes that sustain the essential flow of revenue to state (or local) government and fees that are connected to some regulatory scheme." *Collins Holding Corp.*, 123 F.3d at 800. This charge sounds in such a regulatory scheme. As the district court noted of the County Council, "it's clear that they had in mind that this would have regulatory effects." It is clear, in other words, that the county adopted Bill 29-10 in order to advance its program of reducing greenhouse gas emissions.

The County Council has made little effort to hide its regulatory intent in the text of Bill 29-10. After noting EPA findings that greenhouse gases pose a threat to public health and the environment, the preamble states: "Montgomery County has embraced an 80% reduction in greenhouse gas emissions by 2050 and has begun to engage in programmatic efforts to reduce these emissions." Montgomery County Code, § 52-95(b); *see also id.* §§ 18A-13(h), 18A-14(b). The bill then declares that "[i]t is appropriate that the largest emitters of carbon dioxide in the County contribute to paying for these greenhouse gas reduction programs." *Id.* § 52-95(c). And the revenue raised from the carbon charge is an integral part of the County's greenhouse gas regulatory agenda, for "50% must be reserved for and allocated in the annual operating budget to funding for County greenhouse gas reduction programs." *Id.* § 52-100.

Bill 29-10's place in Montgomery County's "programmatic efforts" is thus two-fold: it creates disincentives for GenOn to

continue polluting and provides funds for others to reduce their carbon dioxide emissions. These may be good and laudable goals. But where an assessment of this type forms such a significant "part of a regulatory program," it is not the sort of mere revenue-raising measure that the Tax Injunction Act leaves solely to the jurisdiction of state courts. *Bidart Bros.*, 73 F.3d at 933.

Nothing in Bill 29-10's legislative history calls into question the notion that the purpose of this carbon charge is largely regulatory. Councilmember Berliner stated candidly that his "proposed carbon tax . . . will incentivize [GenOn] to reduce its emissions." Memorandum from Roger Berliner (Apr. 27, 2010). He further noted that the bill is a way of saying to emitters "I'm going to induce you to do more." Michael Laris, Montgomery official proposes carbon tax on major emitters, Wash. Post, Apr. 22, 2010, at B5. And regarding the ultimate aim of the legislation, the councilman explained that it is "the threat of local government action like this that will drive the industry crazy to the point they are more willing to accept a national regime." *Id.* Again, greenhouse gas reduction may indeed be a commendable aim, but to say that it was not the goal of the County Council here blinks reality.

Montgomery County nevertheless disavows this characterization and instead contends that Bill 29-10 "is utterly devoid of any attempt to regulate [GenOn], or any other emitter of carbon dioxide." *Brief of Appellee* at 8. In the County's view, the bill is not regulatory because it "does not compel any standard of conduct by those who emit carbon dioxide, nor does it mandate that [GenOn] limit the amount of carbon dioxide it emits." *Id.* at 16-17.

The regulatory toolbox is not so limited. Courts have recognized that "[t]he classic regulatory fee . . . may serve regulatory purposes directly by, for example, deliberately discouraging particular conduct by making it more expensive." *San Juan Cellular Tel. Co.*, 967 F.2d at 685. Some

charges that make particular conduct more expensive without mandating particular standards of conduct may still be taxes for purposes of the Tax Injunction Act. *See, e.g.*, Md. Code Ann., Tax-Gen. § 12-101 et seq. (tax on cigarettes). But this carbon charge, which targets a single emitter and is located squarely within the County's own "programmatic efforts to reduce" greenhouse gas emissions, Montgomery County Code, § 52-95(b), is a punitive and regulatory fee over which the federal courts retain jurisdiction.

V.

We cannot overlook the fact that the absence of federal jurisdiction in this case would turn what are truly interstate issues over to local authorities. Applying the Tax Injunction Act might encourage punitive financial strikes against single entities with national connections, for the federal courts would be unavailable to protect companies against local discrimination, preempted state laws, and other federal constitutional violations. The implications of allowing localities to impose financial exactions exclusively upon single entities of national reach with no accountability in federal court are profound, and we decline to foreclose these federal claims with a jurisdictional bar.

Of course we do not resolve this case on the merits, nor do we suggest that one party or the other should prevail on remand. We do not at all begrudge Montgomery County its regulatory purpose here, and there is much to be said for the worthy office of environmental stewardship. All we hold is that the Tax Injunction Act is no bar to federal jurisdiction in this case. We accordingly reverse the judgment of the district court and remand for consideration of GenOn's claims.

*REVERSED AND REMANDED*