12-4659-cv
Entergy Nuclear v. Shumlin

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

———————

August Term, 2013

(Argued: August 27, 2013     Decided: December 10, 2013)

Docket No. 12-4659-cv

———————

ENTERGY NUCLEAR VERMONT YANKEE, LLC; ENTERGY NUCLEAR OPERATIONS, INC.,

*Plaintiffs-Appellants,*

— v. —

PETER SHUMLIN, in his official capacity as Governor of the State of Vermont; WILLIAM SORRELL, in his official capacity as the Attorney General of the State of Vermont; MARY N. PETERSON, in her official capacity as the Commissioner of the Department of Taxes of the State of Vermont,

*Defendants-Appellees.*[*]

———————

B e f o r e:

NEWMAN, RAGGI, and LYNCH, *Circuit Judges*.

———————

———————

[*] The Clerk of Court is respectfully directed to amend the official caption in this case to conform with the caption above.

Appeal from a judgment of the United States District Court for the District of Vermont (Christina Reiss, *Chief Judge*) dismissing plaintiffs' suit for lack of subject matter jurisdiction. Plaintiffs own a nuclear power plant that is the sole entity taxed under Vt. Stat. Ann. tit. 32, § 8661 (the "Generating Tax"), which imposes a charge on electricity produced by every generating facility in the state with a capacity of least 200,000 kilowatts. Plaintiffs brought suit against various state officers in their official capacities, claiming that the Generating Tax is unconstitutional under the Supremacy, Commerce, Equal Protection, and Commerce Clauses of the United States Constitution, and seeking injunctive relief. The district court dismissed for lack of subject matter jurisdiction under the Tax Injunction Act, 28 U.S.C. § 1341 (the "TIA"), which prohibits federal courts from interfering with state taxation schemes so long as the state courts offer an adequate forum to litigate the validity of the tax. Plaintiffs principally contend that the Generating Tax is not a "tax" for purposes of the TIA. We conclude that it is, and that Vermont's procedures offer an adequate opportunity to challenge the constitutionality of the tax in state court. We therefore AFFIRM the judgment of the district court.

CHARLES ALAN ROTHFELD, ESQ. (Hollis L. Hyans, Esq., Robert A. Salerno, Esq., *on the brief*), Morrison & Foerster LLP, Washington, D.C., *for the Plaintiffs-Appellants.*

LAWRENCE S. ROBBINS (Mark T. Stancil, Joshua S. Bolian, *on the brief*), Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP, Washington, D.C., *for* Jonathan T. Rose, Danforth Cardozo, III, Assistant Attorneys General, Office of the Attorney General, Montpelier, Vermont, *for the Defendants-Appellees.*

GERARD E. LYNCH, *Circuit Judge*:

This case requires us to decide whether the Tax Injunction Act, 28 U.S.C. § 1341 (the "TIA"), denies the federal courts jurisdiction to review plaintiffs' challenges to Vermont's Electrical Energy Generating Tax, Vt. Stat. Ann. tit. 32, § 8661 (the "Generating Tax"). We conclude that the TIA applies to the Generating Tax, and that Vermont provides a "plain, speedy and efficient" mechanism for raising the plaintiffs' objections to the validity of the tax. We therefore affirm the district court's dismissal of plaintiffs' challenge to the tax for lack of subject matter jurisdiction.

## BACKGROUND

Plaintiffs Entergy Nuclear Vermont Yankee, LLC and Entergy Nuclear Operations, Inc. (collectively "Entergy") own and operate a nuclear power plant (the "Plant") in Vermont, which is the largest generator of electricity in the state. Entergy purchased the Plant in 2001, and undertook expansions of the Plant's output and facilities in 2003 and 2005. In exchange for Vermont's regulatory approval of these modifications, Entergy entered various Memoranda of Understanding (the "MOUs") with the state, agreeing to make certain payments into designated state funds serving specific policy purposes. In the context of a broader dispute regarding Vermont's refusal to extend regulatory approval for the Plant's continuing operation, Entergy ceased making payments under the MOUs in March 2012.

In May 2012, following a January 2012 district court decision denying Vermont's attempt to shut down the Plant, the Vermont state legislature amended Vt. Stat. Ann. tit. 32, § 8661 to impose a Generating Tax of $0.0025 per kilowatt-hour on electricity produced by plants which have a "name plate generating capacity of 200,000 kilowatts, or more." The Plant is the only facility in Vermont with this characteristic, and thus Entergy is the only entity affected by the Generating Tax.

On September 11, 2012, Entergy brought suit in the United States District Court for the District of Vermont (Christina Reiss, *Chief Judge*) against Vermont governor Peter Shumlin, Vermont attorney general William Sorrell, and Vermont tax commissioner Mary N. Peterson in their respective official capacities (collectively "Vermont"), seeking a declaratory judgment that the Generating Tax is unconstitutional under the Supremacy, Commerce, Equal Protection, and Contract Clauses of the United States Constitution, and requesting injunctive relief to prevent its enforcement. Vermont moved to dismiss for lack of subject matter jurisdiction under the TIA. Concluding that the Generating Tax satisfies the requirements of the TIA, the district court granted Vermont's motion to dismiss on October 26, 2012. Entergy timely appealed.

## DISCUSSION

The TIA prohibits federal courts from interfering with state collection of taxes so long as the state courts offer a "plain, speedy and efficient remedy" for relief from the tax. 28 U.S.C. § 1341. To determine whether the TIA strips the district court of jurisdiction over Entergy's lawsuit, we must decide whether the Generating Tax is a tax for the purposes of the TIA, and whether Vermont offers adequate procedures for challenging its validity in the Vermont state courts.

5

## I.    The Generating Tax is a Tax.

This Circuit's leading case on whether a state assessment qualifies as a tax for the purposes of the TIA is Travelers Insurance Co. v. Cuomo, 14 F.3d 708 (2d Cir. 1993), rev'd on other grounds, New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co., 514 U.S. 645 (1995).[1] Under Travelers, the principal identifying characteristic of a tax, as opposed to some other form of state-imposed financial obligation, is whether the imposition "serve[s] general revenue-raising purposes." 14 F.3d at 713. Whether a measure serves "general revenue-raising purposes" in turn depends on the disposition of the funds raised. If the proceeds are deposited into the state's general fund (rather than directly allocated to the agency that administers the collection, for the purpose of providing a narrow benefit to or offsetting costs for the agency), the imposition will generally be seen as serving the general benefit of the state, and thus as a tax. Id. at 713-14.

---

[1] Although Travelers was reversed on other grounds by the Supreme Court, we have recognized that it continues to control application of the TIA in this Circuit. See Hattem v. Schwarzenegger, 449 F.3d 423, 427 n. 3 (2d Cir. 2006) ("In overruling Cuomo, the Supreme Court made clear in Travelers that it was not disturbing our holding regarding the TIA.").

Under this test, the Generating Tax easily qualifies as a tax for the purposes of the TIA.  The text of the statute imposing the tax, Vt. Stat. Ann. tit. 32, § 8661, classifies the assessment as a "tax" and directs that it be paid to the Commissioner of the Department of Taxes; a further Vermont statute explicitly directs the proceeds of the Generating Tax into the state general fund.  Vt. Stat. Ann. tit. 32, § 435(b)(3).  Nothing in the statute reserves the proceeds of the Generating Tax for any particular purpose.

Entergy's arguments that the Generating Tax ought to be treated as a punitive fine or regulatory fee are unpersuasive.  Entergy argues that the legislative history of the Generating Tax reveals that its purpose is to substitute for the payments formerly received pursuant to the MOUs, the proceeds of which were designated to special-purpose funds.  However, even if this narrative accurately identifies the termination of the MOUs as the impetus for imposition of the Generating Tax, that does not bear on our analysis.  The Travelers test directs us to the allocation of the proceeds from the Generating Tax – to general state revenues as opposed to special-purpose funds – and not to the allocation of prior, repealed or terminated revenue-raising devices.  It is the actual characteristics of the questioned revenue measure, not posited legislative intent

or general political context, that determine its status under the TIA. The characteristics of the Generating Tax with respect to the allocation of its proceeds are unambiguous.

Entergy attempts to inject ambiguity by noting that during the same session in which it enacted the Generating Tax, the legislature appropriated certain funds to various particular purposes that had previously been the beneficiaries of payments under the MOUs. These appropriations, however, were made from the general treasury. 2011 Vt. Acts & Resolves No. 162 § D.108(a)(2). Nothing in the appropriations bill ties the amount of the appropriations to the proceeds collected from the Generating Tax, or otherwise links the appropriations to that tax. The appropriations bill in question also made other unrelated expenditures. See id. §§ D.108(a)(1), D.108(a)(3). Nor does the Generating Tax itself suggest such a specific flow of revenues or other unique relationship. Cf. GenOn Mid-Atlantic, LLC v. Montgomery County, 650 F.3d 1021, 1022 (4th Cir. 2011) (holding a levy on carbon dioxide emitters not a tax under the TIA where "50% [of revenues were] earmarked for funding greenhouse gas reduction programs"). Under these circumstances, as the First Circuit has held in a similar case, "there is neither any precedent nor any plausible

8

jurisprudential basis for analyzing separate tax and subsidy statutes as an integrated unit under the [TIA]." Cumberland Farms, Inc. v. Tax Assessor, 116 F.3d 943, 947 (1st Cir. 1997).

Entergy also argues that the district court erred in relying on our treatment in Travelers of the allocation of the revenues generated by a measure as the primary determinant of its status as a tax, suggesting that the court should have instead applied the three-factor test announced by then-Chief Judge Breyer for the First Circuit in San Juan Cellular Telephone Co. v. Public Service Commission, 967 F.2d 683 (1st Cir. 1992). But Entergy's effort to drive a wedge between our standard and that of the First Circuit is unavailing. We need not decide here whether the additional factors cited in San Juan Cellular – the nature of the entity imposing the tax and the population subject to it, id. at 685 – could in some circumstances be useful, or even determinative, in distinguishing a tax from, say, a user fee or special purpose assessment. On the facts of this case, consideration of those factors only reinforces the conclusion reached by the district court under Travelers.

At the outset, we emphasize that the Travelers court did not see itself as rejecting or distinguishing the First Circuit's position in San Juan Cellular. To the

contrary, in Travelers we quoted San Juan Cellular with approval, noting that "courts 'have tended . . . to emphasize the revenue's ultimate use, asking whether it provides a general benefit to the public, of a sort often financed by a general tax, or whether it provides more narrow benefits to regulated companies or defrays the agency's costs of regulation.'" Travelers, 14 F.3d at 713, quoting San Juan Cellular, 967 F.2d at 685. Other courts applying the San Juan Cellular factors, including the First Circuit itself, have similarly followed that language, and concluded that whether the purported tax is directed to general public purposes is "the most salient factor in the decisional mix." Cumberland Farms, 116 F.3d at 947; see also Collins Holding Corp. v. Jasper County., 123 F.3d 797, 800 (4th Cir. 1997) (observing that "the purpose and ultimate use of the assessment" is "the heart of the inquiry").

As will generally be the case, the other San Juan Cellular factors either reinforce the conclusion drawn from the allocation of the revenue, or are of little significance. The first of these additional factors, the nature of the entity imposing the charge, cuts strongly in favor of classifying the Generating Tax as a tax. Unlike many tolls, user fees, special assessments and other similar measures, the Generating Tax is imposed by the state legislature, and collected by the state's

10

Department of Taxes; it is not imposed by a limited-purpose governmental authority. Here, as in most cases, this factor is closely linked to the ultimate destination of the revenue in the state's treasury, rather than in some special fund for the maintenance of the facility to which the user fee is attached.

Entergy argues that the remaining factor cited in San Juan Cellular, the population subject to the charge, cuts against a finding that the Generating Tax is indeed a tax, since the Plant is the only facility in the state that generates enough electric power to be required to pay the tax. In support of this claim Entergy cites the Fourth Circuit's skepticism as to whether an assessment falling on a single entity qualifies as a tax. See GenOn, 650 F.3d at 1024. But Entergy's treatment of this factor is too simplistic. While certain non-tax user fees and assessments may well fall on a limited population of payers, such fees are usually assessed upon those who ultimately benefit from the very governmental service for which the assessment is earmarked. See, e.g., Gov. Suppliers Consol. Serv. v. Bayh, 975 F.2d 1267, 1271 n. 2 (7th Cir. 1992) (finding a regulatory fee rather than a tax where the "fees are used to implement the . . . regulatory system to which registrants [who pay the fee] are subject"). Many revenue measures that are indisputably taxes, however, fall on a limited portion of the population. A tax on casino revenue, for

example, where the proceeds go to general revenues, is no less a tax because the state has licensed only one casino. Graduated income taxes, or, as in this case, taxes imposed only on entities of a particular size, will often fall only on a limited population, but are nevertheless clearly taxes. The category of persons or entities subject to such taxes is defined by general and open-ended criteria, even if only a few entities, or one entity alone, are subject to the tax. Assuming that this factor is appropriately considered, and even assuming that on the facts of this case it cuts against considering the Generating Tax as subject to the TIA, we conclude that it counts for too little to weigh against the strength of the other factors, and especially the principal criterion of the designation of the revenue to the general treasury. Weighing all of the San Juan Cellular factors thus makes no difference to the outcome: the Generating Tax is a tax for purposes of the TIA.[2]

---

[2] To the extent Entergy argues that the Generating Tax is not a tax because its enactment was the product of local hostility towards the Plant, that argument – which relies on a factor found in neither Travelers nor San Juan Cellular – is unavailing. Assuming arguendo that Entergy is correct about the motivation for the tax, and assuming further that the motivation might bear in some way on the merits of one or more of Entergy's constitutional arguments against the tax (and expressing or implying no opinion on either of those propositions), the argument has no bearing on whether the Generating Tax is a tax within the meaning of the TIA. "Sin taxes" levied on conduct or products the state seeks to discourage, and taxes imposed on industries believed to impose unusual costs on the state or its residents are common, and are unquestionably taxes. See Empress Casino Joliet

## II. Vermont Provides a Plain, Speedy and Efficient Forum for Challenging the Tax.

That the Generating Tax is a "tax" within the meaning of the TIA does not in itself defeat the district court's jurisdiction. The TIA only denies the federal courts power to "enjoin, suspend or restrain" state taxes "where a plain, speedy, and efficient remedy may be had in the [state] courts." 28 U.S.C. § 1341. Such a remedy exists where the available state-court procedures satisfy certain "minimal procedural criteria," including a "full hearing and judicial determination at which [a taxpayer] may raise any and all constitutional objections to the tax." Rosewell v. LaSalle Nat. Bank, 450 U.S. 503, 512, 514 (1981) (internal quotation marks and emphasis omitted). The availability of typical "state administrative and judicial procedures" through which a party can ultimately challenge the validity of the tax in court satisfies these criteria. California v. Grace Brethren Church, 457 U.S. 393, 412 (1982) (observing commonplace state refund procedures that provide for judicial appeal after exhaustion of administrative

---

Corp. v. Balmoral Racing Club, Inc., 651 F.3d 722, 730 (7th Cir. 2011) ("'[S]in taxes' are real taxes . . . We mustn't write transfer payments and behavior-shaping taxes out of the Tax Injunction Act just because it is easier with such taxes to identify winners and losers. The Act would have a very limited reach if we did that.").

remedies satisfy the remedy requirement of the TIA). The condition that lifts the bar to federal jurisdiction is "uncertainty" that the remedy offers the opportunity to seek adequate relief. Rosewell, 450 U.S. at 517. The requirement that the remedy be "plain, speedy and efficient" does not, however, suggest that the remedy must possess any unique attributes that facilitate or accelerate the process of challenging a tax. Id. at 516-517. The Supreme Court has furthermore indicated that the remedial exception to the TIA should be "construe[d] narrowly" to respect the basic purpose of the TIA – preventing the federal judiciary from interfering with the state collection of revenues. Grace Brethren Church, 457 U.S. at 413.

The statutory framework into which the Generating Tax is woven offers "plain, speedy and efficient" access to the state courts such that the TIA remedy requirement is satisfied. The statute imposing the tax states that "[a] person . . . failing to make returns or pay the tax imposed by this section within the time required shall be subject to and governed by the provisions of section[] . . . 3203 of this title." Vt. Stat. Ann. tit. 32, § 8661(b). Section 3203 sets out the procedures by which the Vermont state commissioner notifies taxpayers of deficiencies in payment. Challenges to these deficiency notices are permitted by Vt. Stat. Ann.

14

tit. 32, § 5883, which states that upon receipt of a notice of deficiency under §

3203, a taxpayer may "petition the Commissioner in writing for a determination

of that deficiency . . . [and t]he Commissioner shall thereafter grant a hearing

upon the matter." Judicial review of the commissioner's determination at a §

5883 hearing is, in turn, provided for by Vt. Stat. Ann. tit. 32, § 5885(b).[3] The

Vermont statutory framework thus articulates precisely the type of

administrative and judicial review that has been deemed adequate under the

TIA.

Entergy argues that because §§ 5883 and 5885 permit an appeal of

"determinations" of the commissioner, and the commissioner lacks the power to

address the statutes' constitutionality, Vermont's judicial review procedure does

not grant taxpayers the opportunity to raise constitutional challenges. This

argument lacks merit. We have previously had occasion to observe that while

"state administrative agencies in Vermont are generally not empowered to

consider constitutional challenges to state statutes," Vermont case law establishes

---

[3] Section 5885(b) provides that "any aggrieved taxpayer may . . . after a determination by the commissioner concerning a notice of deficiency . . . appeal that determination to the Washington superior court or [the local Vermont state superior court]."

that "the courts of Vermont are empowered to decide constitutional questions, even when reviewing determinations by administrative agencies that lack such power." Murray v. McDonald, 157 F.3d 147, 148 (2d Cir. 1998) (per curiam). Indeed, the Vermont Supreme Court has adjudicated such questions, see, e.g., In re Williams, 166 Vt. 21 (1996), and has held that even though the commissioner is not empowered to hear constitutional claims, aggrieved taxpayers should still exhaust available administrative remedies before raising constitutional claims before the courts. Stone v. Errecart, 165 Vt. 1, 4 (1996). Thus, we are confident that the Vermont courts have jurisdiction to hear the full array of Entergy's grievances against the tax, constitutional or otherwise, provided that administrative avenues (which may have more limited jurisdiction) are exhausted first,[4] and that Entergy's purported concern that it would not be able to raise constitutional claims before the Vermont courts is baseless.[5]

---

[4] Indeed, this Circuit has specifically noted that the precedent, Barringer v. Griffes, 964 F.2d 1278, 1283-1284 (2d Cir. 1992), upon which Entergy primarily relies to argue the Vermont state courts might lack the power to hear constitutional questions where the initial administrative reviewer cannot hear them has been superseded by Vermont decisions adjudicating such questions. Murray, 157 F.3d at 147-48.

[5] Because the procedures available to challenge the Generating Tax through a tax determination appeal create the type of "plain, speedy and efficient" access to

16

**CONCLUSION**

Because the Generating Tax is a tax within the meaning of the TIA, and Vermont provides an adequate state court forum for Entergy's challenges to the validity of that tax, the TIA deprives the federal courts of jurisdiction to consider those challenges. The judgment of the district court dismissing Entergy's complaint for lack of jurisdiction is accordingly AFFIRMED.

---

judicial review that satisfies the remedy requirement of the TIA, we need not decide whether the alternative remedies Vermont argues are also available (tax refund appeals and declaratory relief) satisfy the remedy requirement.