PIEDMONT GARDENS, LLC, Samuel Pollack, Back Bone, LLC, and Barbara Yale, Plaintiffs,

v.

Michael LEBLANC, Frank Caruso, Karen Mulcahy, City of Waterbury, and John Does 1-10 Defendants.

Civil No. 3:14-CV-337(AWT)

United States District Court, D. Connecticut.

Signed February 29, 2016.

David C. Yale, Hassett & George, PC, Simsbury, CT, H. James Stedronsky, Law Office of James Stedronsky, LLC, Litchfield, CT, for Plaintiffs.

Cheryl E. Johnson, Law Office of Cheryl E. Johnson, Deland, FL, Connor McNamara, Tara Lindsay Shaw, Thomas G. Parisot, Secor, Cassidy & McPartland, P.C., Waterbury, CT, for Defendants.

## RULING ON MOTION TO DISMISS

Alvin W. Thompson, United States District Judge

Plaintiffs Piedmont Gardens, LLC, Samuel Pollack, Back Bone, LLC, and Barbara Yale bring a four-count Amended Complaint against defendants Michael LeBlanc, Frank Caruso, Karen Mulcahy, and the City of Waterbury. The defendants have moved to dismiss the Amended Complaint

arguing, inter alia, that the court lacks subject matter jurisdiction as to all counts.

For the reasons set forth below, the defendant's motion to dismiss is being granted.

## I. FACTUAL ALLEGATIONS

"The complaint, which [the court] must accept as true for purposes of testing its sufficiency, alleges the following circumstances." Monsky v. Moraghan, 127 F.3d 243, 244 (2d Cir.1997). The plaintiffs are all owners of real property within the City of Waterbury. At all times pertinent to this action, defendant Michael LeBlanc has been the Director of Finance for Waterbury; defendant Frank Caruso has been the Tax Collector for Waterbury; and defendant Karen Mulcahy has been the Deputy Tax Collector for Waterbury. The plaintiffs also name as defendants ten unnamed state marshals and/or constables (Hereafter "marshal" means "marshal and/or constable").

The plaintiffs allege that the defendants violated the requirements of Connecticut statutes and of provisions in the City of Waterbury's charter related to the collection of delinquent taxes. The plaintiffs allege that these violations affected each of them in one or more of the following ways:

a. If a tax alias warrant was issued relating to a parcel of real property, the Office of Tax Collections for the City of Waterbury would refuse to accept payments for taxes owed on such parcel, instead telling persons attempting to pay such taxes that they were required to deal with the [marshal] that had served such alias tax warrant. . . .

b. If a tax alias warrant was issued relating to a parcel of real property, and the Office of Tax Collections for the City of Waterbury received a payment for the payment of taxes on said parcel, the Office of Tax Collection would give all or a portion of the payment to the [mar-shal] who had served such alias tax warrant. . . .

c. If a tax alias warrant was issued relating to a parcel of real property, and the Office of Tax Collections for the City of Waterbury received a mailed check for the payment of taxes on said parcel, the Office of Tax Collection would give the check to the [marshal] that had served such alias tax warrant uncashed. . . .

d. The website for the Office of Tax Collection provided for the on-line payment of taxes. If a tax alias warrant was issued relating to a parcel of real property the website was configured or designed so that no online payment of that delinquent tax could be made.

e. Upon statement and belief, if an alias tax warrant was issued related to a delinquent tax payment, the record for the [ ] tax bill was marked with a "W" and that was an indication to employees of the Office of Tax Collection that they should not accept payment for that tax bill and should inform anyone inquiring about the tax bill that they had to talk to the [marshal] who served said alias tax warrant.

f. Once one of the [marshals] had possession of monies intended for the payment of delinquent taxes, th[e marshal] would retain approximately 15% of the amount and turn the remainder over to the Office of Tax Collections for the City of Waterbury.

(Pls.' Third Am. Compl. ("Compl."), Doc. No. 38, at ¶ 34(a)-(f); see also id. at ¶ 4.) The plaintiffs also allege that they received a demand for immediate payment of taxes on real property not yet due without notice that a determination had been made that collection of said tax was in jeopardy, but that allegation does not seem to be the basis for any cause of action pled.

The plaintiffs' complaint seeks declaratory and injunctive relief, as well as damages pursuant to 42 U.S.C. § 1983 and Connecticut General Statutes § 52–564, in connection with the assessment and collection procedures of the defendants regarding taxes on the plaintiffs' real property.

## II. LEGAL STANDARD

A claim is properly dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the claim. Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir.1996). On a Rule 12(b)(1) motion to dismiss, the party asserting subject matter jurisdiction "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir.2005).

"[T]he standards for reviewing dismissals granted under 12(b)(1) and 12(b)(6) are identical." Moore v. PaineWebber Inc., 189 F.3d 165, 169 n. 3 (2d Cir.1999). When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555, 127 S.Ct. 1955 (citations omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 570, 127 S.Ct. 1955. "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Mytych v. May Dept. Stores Co., 34 F.Supp.2d 130, 131 (D.Conn.1999) (quoting Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir.1984)).

## III. DISCUSSION

The plaintiffs' claims relate to the collection of real estate taxes by municipalities pursuant to Connecticut General Statutes § 12–162. Under the statutory scheme at issue, the City of Waterbury uses marshals to collect delinquent property taxes. When a tax is overdue, the Tax Collector can issue an alias tax warrant to the marshal to serve on the taxpayer. See Conn. Gen. Stat. § 12–162(b)(1). The statute also provides that:

> Any officer serving an alias tax warrant pursuant to this section shall make return to the collector of such officer's actions thereon within ten days of the completion of service and shall be entitled to collect from such person the fees allowed by the law for serving executions issued by any court.

Conn. Gen. Stat. § 12–162(c) (emphasis added). That fee is capped at 15% of the amount of the execution. See Conn. Gen. Stat. § 52–261(a)(2)(F) ("The following

fees shall be allowed and paid: ... for the levy of an execution, when the money is actually collected and paid over, or the debt or a portion of the debt is secured by the officer, fifteen per cent on the amount of the execution, provided the minimum fee for such execution shall be thirty dollars ....").

Also relevant is Connecticut General Statutes § 12–166, which states in pertinent part:

> Unless the context otherwise requires, 'tax' ... includes each property tax and each installment and part thereof due to a municipality, as such tax may have been increased by interest penalties, fees and charges, including collection fees of a collection agency and attorneys' fees, provided such attorneys' fees shall be limited to those ordered by the court in any court action or proceeding brought by the municipality to recover such tax.

Conn. Gen. Stat. § 12–166. Thus, the marshal's fee, like interest, penalties and other costs of collection, becomes part of the delinquent taxes owed by the taxpayer, and payments are applied first to the marshal's fee.

The defendants contend that the plaintiffs' claims are barred by both the Tax Injunction Act, 28 U.S.C. § 1341, and the comity doctrine. The court agrees. The plaintiffs' claims for injunctive relief and declaratory relief are barred by the Tax Injunction Act, and any claims for damages are barred by the comity doctrine.

## A. The Tax Injunction Act

■ The Tax Injunction Act ("TIA") provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The TIA is "rooted in principles of federalism and in recognition of a state's need to administer its own fiscal operations." Bernard v. Vill. of Spring Valley, 30 F.3d 294, 297 (2d Cir.1994). "[T]he principal purpose of the Tax Injunction Act [is] to limit drastically federal-court interference with the assessment and collection of state taxes." California v. Grace Brethren Church, 457 U.S. 393, 408–09, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982) (internal citation and quotation marks omitted). "[F]ederal courts are precluded from exercising jurisdiction over challenges to state tax assessments, regardless of the type of relief sought." Bernard, 30 F.3d at 297.

■ In evaluating whether a claim is precluded by the TIA, the court considers "whether the relief sought ... would 'enjoin, suspend or restrain the assessment, levy or collection of any tax under State law.'" Direct Marketing Ass'n v. Brohl, — U.S. ——, 135 S.Ct. 1124, 1129, 191 L.Ed.2d 97 (2015) (quoting 28 U.S.C. § 1341). In Brohl, the Court held that the TIA uses "restrain" in a narrow sense, to mean "to prohibit from action; to put compulsion upon ... to enjoin, which captures only those orders that stop (or perhaps compel) acts of assessment, levy and collection." Id. at 1132 (internal citation and quotation marks omitted). Under this definition, a suit does not "restrain" "if it merely inhibits" the assessment, levy or collection of a state tax. Id. at 1133.

In Brohl, the Court described "assessment" as "the official recording of a taxpayer's liability, which occurs after information relevant to the calculation of that liability is reported to the tax authority." Id. (citing 26 U.S.C. § 1530). However, in Hibbs v. Winn, the Court had taken note of the fact that the "term 'assessment' is used in a variety of ways in tax law." 542 U.S. 88, 100 n. 3, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004). With respect to property taxes specifically, the Court stated:

396

In the property-tax setting, the word usually refers to the process by which the taxing authority assigns a taxable value to real or personal property. See, e.g., F. Schoettle, State and Local Taxation: The Law and Policy of Multi–Jurisdictional Taxation 799 (2003) ("ASSESSMENT—The process of putting a value on real or personal property for purposes of a tax to be measured as a percentage of property values. The valuation is ordinarily done by a government official, the 'assessor' or 'tax ᵗassessor,' who will sometimes hire a private professional to do the actual valuations."); Black's Law Dictionary 112 (7th ed.1999) (defining "assessment" as, inter alia: "Official valuation of property for purposes of taxation <assessment of the beach house>.—Also termed tax assessment. Cf. appraisal."). See also 5 R. Powell, Real Property § 39.02 (M. Wolf ed.2000). To calculate the amount of property taxes owed, the tax assessor multiplies the assessed value by the appropriate tax rate.

Id. Here, the parties disagree about whether the "full amount" of the taxes includes the marshal's fee (see Defs.' Reply Br., Doc. No. 47, at 2), not about the process by which the City of Waterbury assigns a taxable value to the property. Thus, contrary to the defendants' contention, the relief sought here would not enjoin, suspend, or restrain the assessment of property tax by the City of Waterbury.

■ There is no contention here that the relief sought would enjoin, suspend, or restrain the levy of any tax, but the defendants do contend that the relief sought by the plaintiffs would violate the prohibition under the TIA with respect to the collection of taxes. "Collection" refers to "the act of obtaining payment of taxes due." Brohl, 135 S.Ct. at 1130. The plaintiffs seek changes to the procedure that Waterbury follows to collect taxes when a marshal has served an alias tax warrant but has not

actually collected the delinquent tax. The plaintiffs assert that in such a situation, the marshal has not satisfied the statutory requirements for being entitled to collect a fee.

In Counts One and Two, claims brought pursuant to 42 U.S.C. § 1983, the plaintiffs seek an order requiring Waterbury officials to accept a tax payment after a marshal has served an alias tax warrant. (See Compl. at ¶¶ 92, 100.) In Count Three, also a claim brought pursuant to 42 U.S.C. § 1983, the plaintiffs seek a determination that the practice by Waterbury officials of turning over taxpayers' payments to the marshal who served the warrant, who then retains the marshal's fee before returning the balance to the city, violates the plaintiffs' constitutional rights. (See Compl. at ¶ 106.) The relief requested in these three counts relates to the collection process and is contrary to § 12–162, which states that a marshal who serves the alias tax warrant is then entitled to collect a fee from the taxpayer. Thus, the relief sought by the plaintiffs would require this court to direct the City of Waterbury to change, in certain situations, its procedure for collecting delinquent property taxes after the Tax Collector has issued an alias tax warrant to a marshal. In those instances, the City of Waterbury would not be able to collect that part of the tax (as defined in Conn. Gen. Stat. § 12–166) attributable to the marshal's fee.

Therefore, if a plain, speedy, and efficient remedy may be had by the plaintiffs in state court, this court lacks subject matter jurisdiction over their claims for injunctive and declaratory relief by virtue of the TIA, because they seek to have the court enjoin, suspend, or restrain the collection of personal property tax under Connecticut law. As discussed in Part III.C. below, such a remedy in state court may be had.

The plaintiffs argue that the word "fees" in § 12–166 means only fees that are paid to a private collection agency. (See Pls.' Mem. in Obj. to Defs.' Mot. to Dismiss ("Pls.' Mem."), Doc. No. 44, at 7-8.) However, the language of the statute is clear and unambiguous. It states that the term "tax" includes each property tax "as such tax may have been increased by interest, penalties, fees, and charges including collection fees of a collection agency . . . ." Conn. Gen. Stat. § 12–166 (emphasis added). "[U]nder traditional rules of statutory construction, the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle." Fed. Land Bank v. Bismarck Lumber Co., 314 U.S. 95, 100, 62 S.Ct. 1, 86 L.Ed. 65 (1941) (internal citation omitted). In § 12–166, "collection fees of a collection agency" is an illustration of one type of fee that becomes part of the tax, but the use of the word "including" expresses that the subsequent language is non-exclusive. Thus, a fee need not be a collection fee of a collection agency to fall within the scope of § 12–162.

The two cases the plaintiffs cite as controlling, Hibbs v. Winn, 542 U.S. 88, 105, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004), and Luessenhop v. Clinton County, 466 F.3d 259, 265–268 (2d Cir.2006) (see Pls.' Mem. at 2), are inapposite. In Hibbs, the plaintiffs were third parties whose own tax liability was not at issue. The Court held that "[t]hird party suits not seeking to stop the collection (or contest the validity) of a tax imposed on plaintiffs . . . were outside Congress' purview." 542 U.S. at 104, 124 S.Ct. 2276 (internal citations omitted) (emphasis in original). Here, by contrast, the plaintiffs are themselves taxpayers who are challenging tax collection practices to which they are subject.

In Luessenhop, taxpayers subjected to foreclosure proceedings challenged the adequacy of notice provided to them by municipalities. The court noted that "[n]one of the plaintiffs disputes . . . the amount of taxes claimed due." 466 F.3d at 261. The court further observed that "the taxpayers are not objecting to the method utilized by the local governments" to collect taxes. Id. at 268. In both respects, the instant case is distinguishable. Here, the plaintiffs dispute what constitutes the full amount of the tax, as they contend that that amount should not include the marshal's fee, and they also object to the method utilized by the City of Waterbury to collect that part of the tax.

The plaintiffs cite Entergy Nuclear Vermont Yankee, LLC v. Shumlin, 737 F.3d 228 (2d Cir.2013) for the proposition that "under the Second Circuit's case law, the fees paid to [marshals] are not themselves a tax, and therefore [are] not covered under the TIA." (Pl.'s Mem. at 6.) However, Shumlin is also inapposite. At issue there was whether an electrical energy generating tax served "general revenue-raising purposes" or was a "punitive fine or regulatory fee," 737 F.3d at 231, and the statements in that case referred to by the plaintiffs in their opposition are taken out of context.

## B. The Comity Doctrine

■ Count Four, a claim for conversion brought pursuant to Connecticut General Statutes § 52–564, alleges that the defendants converted the plaintiffs' money by "paying . . . illegal, unearned fees" to the marshals and seeks treble damages. (Compl. at ¶ 109.) The plaintiffs' claims in Count Four and in Counts One, Two, and Three, to the extent that they seek damages, are barred by the comity doctrine.

The comity doctrine counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction. The doctrine reflects 'a proper respect for state functions, a recogni-

tion of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways.'

Levin v. Commerce Energy, Inc., 560 U.S. 413, 421, 130 S.Ct. 2323, 176 L.Ed.2d 1131 (2010) (quoting Fair Assessment in Real Estate Assoc., Inc. v. McNary, 454 U.S. 100, 112, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981)).

■ "While it is the Tax Injunction Act that prevents federal courts from giving injunctive relief, as long as there is a plain, speedy and efficient remedy in state court, it is the principle of comity that prevents a taxpayer from seeking damages in a § 1983 action if a plain, adequate, and complete remedy may be had in state court." Long Island Lighting Co. v. Town of Brookhaven, 889 F.2d 428, 431 (2d Cir. 1989) (internal citations omitted).[1] This is because "[a]llowing federal courts to entertain § 1983 claims challenging state taxes ... would intrude on the state's administration of its fiscal operations to such a degree that it would, in every practical sense, operate to suspend collection of state taxes." Finizie v. City of Bridgeport, 880 F.Supp. 89, 93 (D.Conn.1995).

Count Four is not a § 1983 claim but a state law claim. However, in Fair Assessment, the Supreme Court recognized that the rationale that supports application of the comity doctrine to § 1983 claims for damages in cases such as the instant case is derived from a principle that predates the enactment of § 1983:

This Court, even before the enactment of § 1983, recognized the important and sensitive nature of state tax systems and the need for federal-court restraint when deciding cases that affect such systems. As Justice Field wrote for the Court shortly before the enactment of § 1983:

> "It is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible. Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public." Dows v. Chicago, 11 Wall. 108, 110, 78 U.S. 108, 20 L.Ed. 65 (1870).

Fair Assessment, 454 U.S. at 102, 102 S.Ct. 177. The Court also observed that the TIA, "and the decisions of this Court which preceded it, reflect the fundamental principle of comity between federal courts and state governments that is essential to 'Our Federalism,' particularly in the area of state taxation." Id. at 103, 102 S.Ct. 177. At the root of the Court's concern about the petitioner's lawsuit in Fair Assessment was the fact that it "would in every practical sense operate to suspend collection of the state taxes, a form of federal-court interference previously rejected by this Court on principles of federalism." Id. at 115, 102 S.Ct. 177 (internal citation and quotation marks omitted). Given the nature of the statutorily recognized rule the marshals play with respect to the collec-

---

[1] The Supreme Court held in Fair Assessment that there is "no significant difference" between this standard and the "plain, speedy and efficient" standard under the TIA, as both "refer to the obvious precept that plaintiffs seeking protection of federal rights in federal courts should be remitted to their state remedies if their federal rights will not thereby be lost." 454 U.S. at 116 n. 8, 102 S.Ct. 177.

tion of delinquent taxes, that would be the case here, not only with respect to Counts One, Two, and Three, but also with respect to Count Four.

■■■ The doctrine of comity is broader in scope than the TIA "because it restrains federal courts from hearing not only cases that decrease a state's revenue, but also those that 'risk disrupting state tax administration.'" Joseph v. Hyman, 659 F.3d 215, 218 (2d Cir.2011) (quoting Levin, 560 U.S. at 413, 130 S.Ct. 2323). "The combined effect of the Tax Injunction Act and the principles of comity require taxpayers to seek protection of their federal rights in state courts so long as the state remedies are plain, adequate and complete." Finizie, 880 F.Supp. at 93. As discussed in Part III.C. below, here the state remedies are plain, adequate, and complete.

The plaintiffs argue that they are not challenging the City of Waterbury's assessment of a tax on their properties or the levying of taxes based on that assessment, but instead are claiming that Waterbury officials and unnamed marshals have violated state law, and that therefore, neither the TIA nor the comity doctrine bars this action. In Hoffer v. Ancel, the plaintiff "maintain[ed] that his damages suit [was] distinguishable because he challenge[d] not the laws themselves or their application, but rather the conduct of the state officials who—he alleges—violated state law in administering the state tax scheme." 32 Fed. Appx. 593 at *4 (2d Cir.2002). There, the court concluded: "But, this Court has held that, when the administration of a state tax scheme is involved, even actions by state tax officials that have been held in state court to contravene state laws are not cognizable in federal court." Id. (citing Bernard v. Vill. of Spring Valley, 30 F.3d 294 (2d Cir.1994)). Thus, despite the plaintiffs' arguments to the contrary, "all of [their] claims are 'in effect seeking a federal-court ruling on a local tax matter,' which

is precisely the type of suit the TIA and the principle of comity are intended to prohibit." Greenberg v. Town of Scarsdale, 477 Fed.Appx. 849 at *1 (2d Cir.2012) (quoting Bernard, 30 F.3d at 297).

## C. Availability of State Law Remedies

■■■ The procedure at issue here is a statutory framework, and the plaintiffs seek an order prohibiting the City of Waterbury from following the statutory framework. Because Connecticut provides several remedies which afford the plaintiffs an opportunity to raise their objections to the property taxes imposed by the City of Waterbury, the plaintiffs' access to federal court is barred by both the TIA and the comity doctrine.

■■■ The requirement of a "plain, speedy and efficient" state court remedy "was designed only to require that the state remedy satisfy certain minimal procedural criteria." Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 512, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981) (emphasis in original). Thus, "[t]he state need only provide an opportunity for a full hearing and judicial determination in which the taxpayer may raise constitutional claims." Finizie v. City of Bridgeport, 880 F.Supp. 89, 93 (D.Conn. 1995). "The state remedy need not be the best remedy available or even equal the remedy which might be available in federal court." Id. at 94.

Connecticut's statutory framework contains three different remedies which provide taxpayers with administrative and judicial review of tax assessments. Under Connecticut General Statutes § 12–118, the taxpayer may administratively appeal his assessment to a board of assessment appeals, and then may appeal the board's decision to Connecticut Superior Court. Also, under Connecticut General Statutes § 12–119, the taxpayer can directly file an action in Connecticut Superior Court to

claim that his property has been wrongfully assessed. Finally, under Connecticut General Statutes § 12–129, the taxpayer can pay a tax under protest and then raise constitutional challenges in an action to obtain a refund. See Finizie, 880 F.Supp. at 94–95.

In light of this statutory framework, in Finizie, the court concluded that "[t]he plaintiff was afforded by statute an opportunity for an administrative review of her taxes, a full hearing and a judicial determination in the superior court where she could have raised her constitutional claims. This is a sufficient remedy." Id. at 95. See also J & M Autobody, Inc. v. Gavin, 27 F.Supp.2d 115, 117 (D.Conn.1998) (holding court lacked subject matter jurisdiction "because plaintiffs' remedies are adequate under state law"); Marshall v. Town of Middlefield, No. 3:07CV1079, 2008 WL 5157753 at *4 (D.Conn. Dec. 5, 2008) ("There is no evidence that [the plaintiffs were] thwarted in [their] attempt to utilize these state law provisions and the Court will not hold the TIA inapplicable because of 'mere speculation' that state courts will not entertain the suit.").

## IV. CONCLUSION

For the reasons set forth above, the defendants' Motion to Dismiss (Doc. No. 39) is hereby GRANTED.

The Clerk shall close this case.

It is so ordered.